# BURSOR & FISHER
#### P.A.

888 SEVENTH AVENUE
NEW YORK, NY 10019
www.bursor.com

PHILIP L. FRAIETTA
Tel: 646.837.7150
Fax: 212.989.9163
pfraietta@bursor.com

April 28, 2022

<u>Via ECF</u>

The Honorable Paul G. Gardephe
United States District Court for the Southern District of New York
40 Foley Square
New York, NY 10007

Re:  *Carter et al. v. Discovery Communications, LLC*, No. 1:22-cv-02031 (S.D.N.Y.)

Dear Judge Gardephe,

     I represent Plaintiffs Crystal Carter, Susan Cifelli, and Letitia Taylor ("Plaintiffs") in the above-referenced action.  I write pursuant to Rule IV.A of your Honor's Individual Rules of Practice to respond to Defendant Discovery Communications, LLC's ("Discovery" or "Defendant") April 25, 2022 letter requesting a pre-motion conference on its anticipated motion to dismiss (ECF No. 14) ("Ltr.").  Plaintiffs will oppose Defendant's motion to dismiss.

## I. Background

     Plaintiffs bring this suit against Defendant for knowingly disclosing their personally identifiable information ("PII") and video-viewing behavior to a third party, Facebook.  By doing so, Defendant violated the Video Privacy Protection Act ("VPPA").

     Defendant owns and operates a website, hgtv.com, that hosts and disseminates "hundreds of videos featuring home and lifestyle content."  ECF No. 1, at ¶ 2 ("Compl.").  Defendant also owns and operates a newsletter ("HGTV's newsletter") that sends subscribers recurrent updates featuring "links back to articles and videos on hgtv.com."  *Id.* ¶ 38.  To receive access to the newsletter, users must provide their email addresses, after which Defendant states "You're subscribed!"  *Id.* 42.  At the moment users click on the "Sign Up" button, however, Defendant's website collects their email address—along with other identifying information—and transmits it to Facebook.  From then on, each time subscribers watch videos on hgtv.com, Defendant sends their identifiers and event data disclosing who they are and what they were watching.  By doing so, Defendant violated the VPPA.

## II. Plaintiffs Are Subscribers and Therefore Consumers

     Defendant first argues that "Plaintiffs are not subscribers under the VPPA because they did not subscribe to a **video** service . . . ."  Ltr. at 2.  That is wrong and misstates the law.

     The VPPA defines consumer as "any renter, purchaser, or subscriber of goods or services

from a video tape service provider." 18 U.S.C. § 2710(a)(1).  Thus, to constitute a consumer, plaintiffs must rent, purchase, or subscribe to goods or services from a video tape service provider.  As an initial matter, Defendant constitutes a video tape service provider.  *See* 18 U.S.C. § 2710(a)(3);  *In re Vizio, Inc., Consumer Privacy Litigation*, 238 F. Supp. 3d 1204, 1222 (C.D. Cal. 2017) (defining "delivery" as being "substantially involved in the conveyance of video content" and "significantly tailored to serve that purpose");  *In re Hulu Privacy Litigation*, 2012 WL 3282960, at *5-6 (N.D. Cal. Aug. 10, 2012) (defining "[s]imilar audio visual materials" as covering "streaming video content" and reflecting "Congress's intent to cover new technologies for pre-recorded video content").  Defendant delivers "audio visual materials" through its website, which "hosts and delivers hundreds of videos featuring home and lifestyle content," along with its newsletter, which "links back to articles and videos on hgtv.com."  *See* Compl. ¶¶ 1, 42.

      Defendant's newsletter constitutes a good or service.  Goods cover, at a minimum, "articles of trade or items of merchandise," and services cover, at a minimum, "an intangible commodity in the form of human effort, such as labor, skill, or advice."  BLACK'S LAW DICTIONARY, 808-809, 1576 (10th Ed.) (defining "goods" and "services").  At the top of Defendant's website sits a banner that reads: "Get inspired! Sign up for our newsletter for the latest ideas, products and projects."  *See* Compl. ¶ 38.  To receive the newsletter and view its contents, users must exchange their email address.  *See id.*  Once they input an email address and click "Sign Up," a new screen appears, declaring "You're subscribed!"  *Id.* at ¶ 42.  "The overwhelming amount of content featured in the newsletter links back to articles and videos on hgtv.com."  *Id.*  By building the newsletter and offering access in exchange for an email address, Defendant's newsletter constitutes a good or service.

      Plaintiffs subscribe to Defendant's newsletter.  "Conventionally, a 'subscription' entails an exchange between subscriber and provider whereby the subscriber imparts money and/or personal information in order to receive a future and recurrent benefit, whether that benefit comprises, for instance, periodical magazines, club membership, cable services, or email updated."  *Austin-Spearman v. AMC Network Entertainment LLC*, 98 F. Supp. 3d 662, 669 (S.D.N.Y. 2015).  Each Plaintiff provided their email address in exchange for accessing and receiving the newsletter on a recurring basis.  *See* Compl. ¶¶ 52, 58, 62.  That exchange sufficiently created a subscription.  *See Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1256 (11th Cir. 2015) (recognizing subscriptions "encompass periodicals, newsletters, blogs, videos, and other services that a user can sign up for (i.e., subscribe to) and receive for free").  Accordingly, Plaintiffs are "subscriber[s] of goods or services from a video tape service provider."  18 U.S.C. § 2710(a)(1).

      Defendant tries to escape this plain reading.  In particular, Defendant reads "subscriber of goods or services" as meaning only those who "subscribe to a video service . . . ."  Ltr. at 2.  The statute's text outright rejects that interpretation.  If Congress intended such a restriction, then it would have said so, precisely as it did when defining "video tape service provider" and "personally identifiable information."  18 U.S.C. § 2710(a)(4) (restricting the former to only those companies that sell "video cassette tapes or similar audio visual materials"); 18 U.S.C. § 2710(a)(3) (restricting the latter to information that identifies "specific video materials or

services"). Yet even under Defendant's strained interpretation, Plaintiffs still adequately allege a VPPA violation because "[t]he overwhelming amount of content featured in the newsletter links back to articles and videos on hgtv.com." Compl. ¶ 43.

For that same reason, Defendant's analysis regarding *Austin-Spearman* is inapposite. There, after oral argument and briefing, the plaintiff sent a letter informing the court that she received "AMC's newsletter as it relates to the *Walking Dead* TV show" and, to that end, had provided her email address. *Austin-Spearman*, 98 F. Supp. 3d at 671. The plaintiff "failed to plead any of these details in her complaint" and "inexplicably" never mentioned it "either during briefing or at oral argument." *Id.* The court reluctantly granted leave to amend, noting "a host of troubling questions and implications" like "whether a plaintiff can constitute a subscriber under the VPPA if she subscribes only to a portion of the provider's services that are distinct and set apart from its provision of videos." *Id.* To be sure, this passage remains dicta, but even to the extent it is persuasive, Plaintiffs have still shown that the newsletter is intertwined with its provision of video, featuring content that "links back to articles and videos on hgtv.com." Compl. ¶ 43 & Figure 17.

Defendant's remaining argument is equally unpersuasive. Defendant argues that Plaintiffs have failed to allege "ongoing commitment or relationship" because "Plaintiffs can opt out of receiving the HGTV email newsletter . . . ." Ltr. at 3. By definition, any subscription—paid or not—allows subscribers to end their commitment or relationship. What underpins a subscription is PII exchanged for a recurring benefit, which is what Plaintiffs have alleged.

**III.    Defendant Disclosed Plaintiffs' PII**

Defendant argues Plaintiffs fail to adequately allege that it disclosed their PII. *See* Ltr. at 3-4. That is incorrect.

The VPPA defines PII as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). One court in this District has defined PII as information that "must itself do the identifying that is relevant for purposes of the VPPA (literally 'information which identifies')—not information disclosed by a provider, plus other pieces of information collected elsewhere by non-defendant third party." *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 182 (S.D.N.Y. 2015). This interpretation generally aligns with the view of some circuits. *Compare In re Nickelodeon Consumer Privacy Litigation*, 827 F.3d 262, 267 (3d Cir. 2016) (defining PII as "information that would readily permit an ordinary person to identify a specific individual's video-watching behavior") *with Yershov v. Gannett Satellite Information Network, Inc.*, 820 F.3d 482 (1st Cir. 2016) (defining PII as "information reasonably and foreseeably likely to reveal which … videos [plaintiff] has obtained"). While *Yershov* articulates the better standard, Plaintiffs' allegations satisfy either approach.

Plaintiffs are Facebook account holders who "enrolled in Defendant's newsletter" and "watched videos on hgtv.com." Compl. ¶¶ 20-21, 56-57,61-62. When first subscribing, they entered their email address, at which point Defendant "disclosed this identifier to Facebook,

along with [their] Facebook ID and other identifying information, like identifiers for [their] browser." *Id.* ¶¶ 22, 58, 63.  Later, when they watched videos on hgtv.com, "Defendant disclosed event data to Facebook, knowing Facebook would combine that data with the identifiers." *Id.* ¶¶ 21, 57, 62.  Plaintiffs exhaustively support these allegations, and they are plainly enough to support the inference that Defendant "knowingly transmit[s] Plaintiffs' and the putative class's personally identifiable information to unrelated third parties." *Id.* ¶ 5.  Indeed, courts regard email addresses and Facebook IDs as paradigmatic examples of what sufficiently identifies a particular person.  *See Robinson*, 152 F. Supp. 3d at 184 ("A Facebook ID, as the *Hulu* court found, is thus equivalent to a name—it stands in for a specific person, unlike a device identifier."); *see also Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 986 (9th Cir. 2017) ("A Facebook link or an email address may very well readily enable an 'ordinary person' to identify an individual.").  And as for the "specific video material," Plaintiffs' complaint shows that Defendant discloses the precise title watched.  *See, e.g.*, Compl. ¶ 20.  Nothing more is required.

Defendant offers no persuasive rebuttal.  Defendant cites to *Bernardino v. Barnes & Noble Booksellers, Inc.*, 2017 WL 3727230, at *8 (S.D.N.Y. Aug. 11, 2017), a case reviewing a motion for preliminary injunction.  *Id.*  There, the court simply found that "there is no binding precedent to support Bernardino's broad interpretation" and, on the other hand, "there is case law to support Barnes & Nobles position," so Bernardino "has not made a clear and substantial showing of success on the merits."  *Id.*  Instead, the better reference is *Robinson*, where the court expressly noted that the defendant "could not disclose the information at issue here, along with a code that enabled [a third-party] to decrypt the hashed serial number and other information necessary to determine the specific device's user, and still evade liability." *Robinson*, 152 F. Supp. 3d at 182-83.  In other words, exactly what Plaintiffs allege here.

Defendant's other arguments fare no better.  Defendant argues that Plaintiffs must plead they either watched videos while "actually logged into Facebook" or "inputted their email addresses … [and] shortly thereafter watched videos."  Ltr. at 3-4.  But as the Eleventh Circuit recognized, these temporal limitations lack sense because "the Washington video store could have violated the VPPA, even if Judge Bork forgot his video store rental card, had it been able to physically identify him as the person who rented a particular movie and then given that information to a third party."  *Id.* at 1257.  That analysis applies with equal force here, and it fully rebuts Defendant's position.

## IV. Defendant Disclosed Plaintiffs' PII Knowingly

Defendant argues that Plaintiffs have failed to show Defendant "knows that Facebook combines event data with identifiers."  Ltr. at 4.  That argument can be swiftly defeated.

A defendant discloses PII knowingly when it possesses "consciousness of transmitting the private information."  *In re Hulu Privacy Litigation*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015).  This approach is "consistent with cases that have explained the knowledge requirement under the Electronic Communications Privacy Act of 1986, on which the VPPA was modeled." *Id.*  It does not matter whether the defendant possesses "knowledge of illegality or potential consequences," *see Senne v. Village of Paletine, Ill.*, 695 F. 3d 597, 603 (7th Cir. 2012), nor does

it matter whether "third parties actually see the disclosed information to constitute a violation." *Easlin v. The Coca-Cola Co.*, 136 F. Supp. 3d 654, 671 (E.D. Penn. 2015). Defendant used the data derived from the Facebook Tracking Pixel to build "Audiences" that it could later retarget. Compl. ¶ 9. Defendant also "control[led] what actions … the Facebook Tracking Pixel will collect," along with "how the Facebook Tracking Pixel identifies visitors." *Id.* ¶¶ 13-14. This conclusively shows knowledge, and analogies to the Facebook Like button offer no reprieve.

### V.     Plaintiffs Have Article III Standing

Defendant also argues that Plaintiffs lack Article III standing. *See* Ltr. at 4-5. But federal courts in this District and across the country agree that violating the VPPA confers Article III standing. *See, e.g.*, *Austin-Spearman*, 98 F. Supp. 3d at 666-67 ("[T]he VPPA creates a right to the privacy of one's video-watching history, the deprivation of which – through wrongful disclosure, or statutory violation alone – constitutes an injury sufficient to confer Article III standing.") (citing other decisions in accord); *Yershov v. Gannet Satellite Information Network, Inc.*, 204 F. Supp. 3d 353, 359-62 (D. Mass. 2016) (same); *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 784-787 (N.D. Cal. 2019) (same).

Implicitly recognizing the mountain of case law against its position, Defendant argues that the Supreme Court's holding in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) somehow changes the analysis. *See* Ltr. at 4-5. But *TransUnion* confirms that Plaintiffs have Article III standing to pursue this case. A federal court recently addressed this argument in *Pratt v. KSE Sportsman Media, Inc. d/b/a Outdoor Sportsman Group, Inc.*, -- F. Supp. 3d --, 2022 WL 469075 (E.D. Mich. Feb. 15, 2022), a case brought pursuant to Michigan's state analog to the VPPA. Reviewing allegations that plaintiffs' "'Private Reading Information' was disclosed to third parties without their consent," Judge Ludington found that "*Transunion* reinforces that Plaintiffs' [Michigan VPPA] claims have Article III standing." *Id.* at *9.

To be sure, Defendant attempts to recast Plaintiffs' allegations to be "only that the disclosure in the Privacy Notice of HGTV.com does not meet the requirements of a 'distinct and separate' consent set forth in 18 U.S.C. § 2710(b)(2)," but that is incorrect. Ltr. at 5. Defendant violated the VPPA by "knowingly transmitting Plaintiffs' and the putative class's personally identifiable information to unrelated third parties," along with their video-viewing behavior. *See, e.g.* Compl. ¶ 5. Plaintiffs agree that Defendant failed to receive the requisite consent, but that does not take away from the central allegation that Defendant violated the VPPA by allegedly disclosed Plaintiffs' PII and video-watching behavior. Simply put, Plaintiffs have Article III standing.

                                                                                Very truly yours,

                                                                                Philip L. Fraietta

CC:     All counsel of record (via ECF)